**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:22-cr-00057 (RCL)** |
| **v.** | : | |
| | : | |
| **KENNETH RADER,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum. For the reasons set forth below, the government requests that this Court sentence Rader to 90 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

**I.      Introduction**

Kenneth Rader, a 54-year-old man from Sioux City, Iowa, enthusiastically participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than $2.7 million in losses.[1]

Rader pleaded guilty to Count Four of the Information, charging Parading, Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). A sentence of incarceration is appropriate in this case because Rader: (1) repeatedly broadcast his intent to

---

[1] Although the Statement of Offense in this matter, filed on June 7, 2022, (ECF No. 21 at ¶ 6) reflects a sum of more than $1.4 million for repairs, as of April 5, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,734,783.15. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

interrupt the certification of the 2020 election – by participating in a violent civil war, if necessary – to his social media followers and encouraged them to join him; (2) unlawfully entered the U.S. Capitol Building through the Senate Wing Door approximately 90 seconds after it was forcefully breached; (3) celebrated the events of January 6, 2021 through messages to friends and family members; (4) has failed to show remorse for his unlawful conduct on January 6, 2021; (5) has an extensive criminal history; and, (6) violated the terms of his release during the pendency of this case.

In fashioning an appropriate sentence, the Court also should consider that Rader's conduct on January 6, like that of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers, breach the Capitol Building, and disrupt the proceedings. *See United States v. Thomas Fee*, 1:21-cr-00131 (JDB), Tr. 04/01/2022 at 17 ("The defendant was an active participant in a mob assault on our core democratic values and our cherished institution. And that assault was intended by many and by the mob at large in general to interfere with an important democratic processes of this country. I cannot ignore that, cannot pull this misdemeanor out of that context.") (statement of Judge Bates). Rader's actions and those of his fellow rioters enabled the breach the Capitol, threatened the lives of the police officers, legislators and their staffs, and disrupted the certification vote for several hours. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 25 ("A mob isn't a mob without the numbers. The people who were committing those violent acts did so because they had the safety of numbers.") (statement of Judge Chutkan). Here, the facts of and circumstances of Rader's crime support a sentence of 90 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

## Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 21 (Statement of Offense), at ¶¶ 1-7. As the Court knows, a riot cannot occur without rioters, and each rioter's actions—from the most mundane to the most egregious—contributed, directly and indirectly, to the violence and destruction of that day. With that backdrop we turn to Rader's conduct and behavior on January 6.

### *Rader's Role in the January 6, 2021 Attack on the Capitol*

As early as November 7, 2020, when Joseph Biden was declared to be the winner of the 2020 presidential election, Rader began planning his travel from Sioux City, Iowa, to Washington, D.C. *Id.* at ¶ 9.  In Facebook postings, Rader described his intent to interrupt the certification of the Electoral results and the inauguration of President Biden and encouraged his friends and family members to join him. *Id.*  On November 7, 2020, he stated that he joined a militia and declared "CIVIL WAR!" to his social media friends, even labeling those who rejoiced in the election results as treasonous and commenting, "You do know what the consequences of treason is, right?"  *Id.* at ¶ 10. In late November and early December 2020, Rader detailed his plans to travel to Washington, D.C. on Facebook, stating, "there will be no peaceful transfer [of] power," and any attempted inauguration "is going to spill blood in the streets." *Id.* at ¶¶ 10-12. He warned President-elect Biden that, "[w]e the people will not allow you to walk through that gate." *Id.* at ¶ 12.

Rader's comments became even more heated as the January 6, 2021 certification approached. *Id.* at ¶ 13. On December 20, 2020 and December 21, 2020, he commented on Facebook, "Is this guy really that stupid as to think that if he tries to walk in that Whitehouse [sic], it won[']t be surrounded by millions of patriots," "I call dibs I'll behead him like ISIS," and,

"There's no legal protection for treason." *Id.* On December 24, 2020, Rader posted as his status, in part, "We are right around the corner from Civil War. I'm ready to do this. Don't get me wrong, I would much rather see a peaceful homeland, but I will not sit back and do nothing to stop it." *Id.* In Facebook status updates and private messages to approximately 40 of his "Facebook friends,"[2] Rader stated that the inauguration of President Biden, "cannot be allowed," that he intended to participate in a "civil war," and would go "to the front line." *Id.* at ¶ 14. Sharing an image on January 4, 2021 that read, "Operation Occupy the Capitol, January 6, 2021," Rader stated, "We[']re going to remove the corrupt politions [sic] and take our country back," and "I will not stand by and let this go unanswered." *Id.*

Discussing his trip to Washington, D.C. and encouraging others to join him, Rader stated on January 4, 2021, "I got a ton of food and a Coleman burner. I got $1,400.00 cash [in] a rental car. Now let[']s go show these corrupt politicians that WE THE PEOPLE are not having this." *Id.* at ¶ 15. On January 5, 2021, he sent a private Facebook message stating, "I'm on my way to the front line. We are 1 day away from Civil War." *Id.*

After he attended the former President's rally, Rader marched with other individuals to the restricted U.S. Capitol Grounds. *Id.* at ¶ 16. At approximately 2:00 p.m., Rader stood by and cheered as individuals on the West Lawn surrounded a group of Metropolitan Police Department ("MPD") officers, attempted to prevent the officers' access to the Capitol Building, and yelled at the officers. *See generally id.* at ¶ 17.

---

[2] Rader apparently was prevented from sharing his Facebook posts even more broadly. He claimed as early as December 31, 2020 that his posting privileges were restricted until January 24, 2021. *See also* PSR ¶ 74 ("The defendant stated his Facebook account was deactivated due to his involvement in the January 6, 2021 events").



*Figure 1: Rader (circled in red), standing next to the Northwest Steps, as the crowd surrounds and taunts MPD officers attempting to reach the Capitol Building. See https://www.youtube.com/watch?v=8Vh8wPeo6Jk&t=343s*

Rader then was one of the first individuals to climb through the scaffolding and ascend the Northwest Steps to the Capitol Building after Capitol Police Officers defending the steps were overwhelmed by other rioters. He climbed the Northwest Steps at approximately 2:11 p.m. *Id.*



*Figure 2: Rader (circled in red), climbing the Northwest Steps.*

Rader entered the Capitol Building through the Senate Wing Door fewer than 90 seconds

after it was violently breached. *Id.* at ¶ 18. He remained inside the building, near the Senate Wing Door, for approximately three minutes, walking near a broken window, retrieving pieces of broken glass and plaster as souvenirs, and speaking with unidentified individuals. *Id.* Alarms rang out from the breached door as rioters rushed by.



*Figure 3: Rader (circled in red) near the Senate Wing Door as rioters enter through the door and broken window.*



*Figure 4: Rader standing near the Senate Wing Door, filmed by an individual outside the Capitol Building.*



*Figure 5: Rader (circled in red) retrieving pieces of broken glass and plaster as souvenirs.*

Rader filmed and posted to Facebook a video from outside the Capitol Building. He showed the crowd gathered on the West Lawn and the Upper West Terrace and exclaimed, "Look at that. See what I'm talking about? See them out there? Everybody thought we were joking, man. Everybody thought it was a joke, or didn't take it serious. Well, this is what you call serious."



*Figure 6: Rader pointing to graffiti on the Capitol Building as speaks to the viewers of his video.*

*Social Media Posts*

After the attack on the Capitol, Rader used Facebook messages to celebrate the January 6 riot, spread false information, promote the QAnon conspiracy theory[3], and boast about his purportedly valuable souvenirs from the Capitol Building. Just hours after the riots, he told friends and family members that, "a po[i]nt was made" that "nothing is beyond the people[']s reach." *Id.* at ¶ 19. He said to his sister, "lho they hear us now."[4] On January 7, 2021, he told his sister that, should President-elect Biden "dare[]" attempt to be inaugurated as President, "you can bet your ass this will be what be happening daily to wherever he goes. Yesterday proves we're unstoppable." *Id.* He stated to a friend, "we took the capirol [sic]." On January 10, 2021, Rader sent a Facebook message to around 40 of his followers falsely claiming that, "Civil War is inevitable … The election was stolen, there[']s overwhelming evidence that the only thing that would keep a person from seeing it is their own bias, and this cannot be allowed. The people will rise up to insure it don't." Around January 20, 2021, Rader boasted to dozens of his "Facebook friends" that the glass and plaster he took from the Capitol Building would be "worth millions."

Rader expressed defiance as it became clear that individuals who committed crimes on January 6, 2021 were being investigated by the FBI, charged with federal offenses, and arrested. He told his Facebook friends that, "I will NEVER sell out my convictions, FOR NOTHING! Like I said, I've already said, I'm prepared to die for my cause." Considering the possibility of being

---

[3] Individuals associated with the QAnon conspiracy theory believe that former President Trump would be "reinaugurated" on March 20, 2021, and that, at the moment of a "Great Awakening," the general public would recognize a fantastical conspiracy of Satan-worshiping pedophile Democratic politicians, abetted by celebrities, who traffic children for sexual purposes. QAnon adherents professed belief that former President Trump took office to battle and take down this cabal and would be reinaugurated to do so.

[4] "LHO" is used in text messages as an abbreviation for "laughing head off."

prosecuted, Rader sent a message to approximately 40 of his Facebook friends on February 25, 2021 that read, in part,

> I don't care if the feds come arrest me, and I won't be a pussy like the rest of them. When the judge says you're going to prison, I'm going to say, no disrespect, your honor, but I made peace with God before I left, so let's do this.

*Id.* at ¶ 20.

*Defendant's Interviews With the FBI*

On September 21, 2021, Rader voluntarily spoke with agents of the FBI. He admitted going to the former President's rally on January 6, 2021 and walking over to the Capitol Building after he heard a "big boom" and found out about the riot. However, Rader falsely claimed that the riot was over by the time he arrived. He also misled the FBI by stating that he looked in an open door of the Capitol Building, but did not go inside and did not talk to anyone who went inside. He stated that the police there at the time were not doing anything or telling him to leave.

Following his arrest on January 20, 2022, Rader again voluntarily spoke with FBI agents. Rader described the misdemeanor charges he and others were facing as a result of their conduct on January 6, 2021 as "ridiculous" because the people were going into "their own building." He also described the situation regarding his arrest as "almost laughable." Rader stated that he attended the "Stop the Steal" rally to show representation for his lost vote during a "stolen" election. He again falsely claimed that he did not go inside the Capitol Building, but then conceded that he may have "taken a step in" near a broken window and reached down and picked up a piece of glass off of the ground. Rader stated that he walked inside, grabbed a piece of glass, noticed a camera, and exited the building.

*Rader's Conduct While on Release*

On pretrial release in this case since January 27, 2022, Rader has used methamphetamine multiple times since at least June 22, 2022. ECF No. 30 ("PSR") at ¶ 90. He left inpatient treatment

on that date, failed to report to outpatient treatment, and repeatedly failed to appear for drug testing by Pretrial Services. *Id.*; *see also id.* at ¶ 6. Rader also failed to timely appear in state court in Elk Point, South Dakota, on July 21, 2022, resulting in the issuance of a bench warrant and his detention. *Id.*

*The Charges and Plea Agreement*

On January 11, 2022, the United States charged Rader by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). *See* ECF No. 1. On January 20, 2022, law enforcement officers arrested him at his home in Sioux City, Iowa. *See* ECF No. 5. On February 18, 2022, the United States charged Rader by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). *See* ECF No. 15. On June 7, 2022, pursuant to a plea agreement, Rader pleaded guilty to Count Four of the Information, which charged him with a violation of 40 U.S.C. § 5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol Building. *See* ECF No. 20 at 1.

**II.    Statutory Penalties**

Rader now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As recognized by the plea agreement and the Presentence Investigation Report, he faces up to six months of imprisonment, a term of probation of not more than five years, and a fine of up to $5,000. *See id.* at 1; *see also* PSR at ¶¶ 105-111. Rader must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. § 1B1.9.

### III.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 90 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol, on January 6, 2021 was a crime unparalleled in American history and defies comparison to other violent riots. It represented a grave threat to our democratic norms and practices. Indeed, it was the one of the only times in our history when the Capitol Building was literally occupied by hostile participants.

While each defendant must be sentenced based on his or her own conduct, the Court should take into account that each person who entered the Capitol on January 6 without authorization did so as part of a larger crime to which his or her actions directly contributed. As each entered the Capitol, he or she very likely crossed through numerous barriers and barricades and heard the violent outcries of a mob. Depending on the timing and location of their approach, he or she also may have observed extensive fighting between the rioters and police and smelled chemical irritants in the air. Alarms blared and glass was strewn about the floor. No rioter was a mere tourist that day.

Additionally, while assessing Rader's individual conduct and fashioning a just sentence, this Court should look to a number of critical aggravating and mitigating factors, including: (1) whether, when, and how the defendant entered the Capitol building; (2) whether the defendant encouraged or engaged in violence; (3) whether the defendant encouraged or engaged in acts of property destruction; (4) defendant's reaction to acts of violence or destruction; (5) whether, during or after the riot, the defendant destroyed evidence; (6) the length of the defendant's time inside of the building, and exactly where the defendant traveled; (7) the defendant's statements in person or on social media; (8) whether the defendant cooperated with, deceived, or ignored law enforcement officers; and (9) whether the defendant demonstrated sincere remorse or contrition. While these factors are not exhaustive nor dispositive, they help to place each defendant on a spectrum for purposes of fashioning a fair and just punishment.

Had Rader personally engaged in violence or destruction, he would be facing additional charges and/or penalties associated with that conduct. The absence of violent or destructive acts – or other crimes – on the part of Rader is therefore not a mitigating factor in this case.

Rader was prepared for violence when he traveled to Washington, D.C., and publicly encouraged his friends and family members to join him in the anticipated "civil war." He predicted that the inauguration of President Biden would cause "blood in the streets," "called dibs" on beheading someone (assumed to be President Biden), and promised to personally block the President's path to the White House doors. Before the Electoral College certification, Rader loaded his car with cash and provisions "on his way to the front lines." He cheered and yelled at officers as the rioters advanced to the Capitol Building and overwhelmed law enforcement. Notably, he was one of the first individuals inside the Capitol Building, fewer than 90 seconds after the Senate Wing Door was violently breached. The window adjacent to the door through which Rader passed

had just been smashed out. He stood among broken glass as security alarms emitted a loud, high-pitched beeping, similar to a smoke alarm. Rader watched a stream of rioters rushing past. He then paused to take as a keepsake the shattered remnants of a Capitol window and plaster from the wall. Rader later celebrated the "unstoppable" movement after the January 6 riot.

Rader's statements after January 6 show a total lack of remorse. When he was interviewed by the FBI in September 2021, well prior to his arrest, he claimed – falsely – that the riot was over by the time he arrived at the Capitol Building and that he only peeked in an open door without going inside. Rader also argued that the police were not doing anything or telling him to leave. When he was interviewed again in January 2022, following his arrest, he was defiant and stated that he and his fellow rioters had a right to enter the U.S. Capitol because they were simply going into "their own building." He called the charges "ridiculous" and the situation regarding his arrest "almost laughable."

Rader's statements to his friends and family on social media during and after the attack similarly demonstrate a lack of remorse. Gloating that he and others "took the capi[t]ol," he told friends and family members that, "a po[i]nt was made," "nothing is beyond the people[']s reach," "they hear us now," and "we're unstoppable." His own words speak of future political violence, ominously warning after the riot that, "Civil War is inevitable." And regardless of any declarations of regret that Rader may make upon sentencing, Rader made clear in February 2021 that he would be defiant when it came to taking responsibility for his wrongdoing, telling approximately 40 friends and family members,

> I don't care if the feds come arrest me, and I won't be a pussy like the rest of them. When the judge says you're going to prison, I'm going to say, no disrespect, your honor, but I made peace with God before I left, so let's do this.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration.

### B.  The History and Characteristics of Rader

Rader's extensive criminal history and his violations of the conditions of release in this case counsel in favor of a sentence of imprisonment. Rader, age 54, has been convicted of crimes on 23 occasions; he has been convicted of an offense almost every two or three years since he was 17 years old, including a criminal mischief conviction within the last year for damaging someone's crops. *See* PSR at ¶¶ 32-54. For example, Rader has multiple convictions for theft and burglary offenses, assaultive conduct,[5] controlled substance offenses,[6] failures to report to custody, and intoxicated driving. He currently stands charged in Union County, South Dakota, with allegedly stalking and trespassing on the property of his former girlfriend in October and November 2021. *Id.* at ¶ 64. Courts have found Rader in violation of parole or probation conditions at least seven times.[7] In addition to his lengthy record of convictions and parole and probation violations, Rader

---

[5] For example, in 1996, at age 28, Rader was charged with assaulting a woman. PSR at ¶ 42. According to the Affidavit, he punched her in the nose and repeatedly threatened to kill her, and according to the Trial Information, he entered her residence with intent to commit assault. *Id.* Rader pleaded guilty to burglary and assault charges and was sentenced to 10 years' incarceration. *Id.* In 2009, at age 41, Rader was charged with aggravated assault. *Id.* at ¶ 50. According to the Trial Information, he bit off a piece of someone's ear. *Id.* He was sentenced to 60 days' incarceration. *Id.*

[6] For example, in 2015, at age 47, Rader was convicted of possession of contraband. PSR at ¶ 51. According to the Affidavit, when Rader surrendered himself to county jail for a parole violation, he smuggled marijuana into the jail. *Id.* Rader was sentenced to five years' incarceration. *Id*. In 2016, at age 48, Rader was charged with conspiracy to possess with intent to deliver a controlled substance. *Id.* at ¶ 52. According to the Affidavit, when officers arrested Rader at a hotel on a parole violation warrant, they recovered 56.7 grams of crystal methamphetamine, two ounces of marijuana, and a digital scale. *Id.* Rader was sentenced to an indeterminate term of 15 years' incarceration, suspended. *Id*.

[7] While Rader's commission of new offenses was presumably the basis for some if not most of his parole violations, the PSR specifically notes as the basis for violations in 2017 and 2018 that Rader violated his supervision by using controlled substances, not meeting with his probation officer, and leaving the state without permission. PSR at ¶¶ 51, 52.

also has been arrested an additional 11 times as an adult, although the charges were dismissed. *Id.* at ¶¶ 57-66. Rader's lengthy, unrelenting history of criminal conduct, including multiple parole and probation violations, demonstrates his complete disregard for the law and underscores the need for the custodial sentence urged here by the government.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. "The violence and destruction of property at the U.S. Capitol on January 6 showed a blatant and appalling disregard for our institutions of government and the orderly administration of the democratic process."[8] As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually – should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B) & (C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

---

[8] Federal Bureau of Investigation Director Christopher Wray, Statement before the House Oversight and Reform Committee (June 15, 2021), available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Wray%20 Testimony.pdf

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37 (statement of Judge Nichols). A sentence less than incarceration here would send would-be rioters "that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, [and] then people will say why not do it again." *United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 (statement of Judge Walton).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. As noted by Judge Moss during sentencing, in *United States v. Paul Hodgkins*, 21-cr-188-RDM:

> [D]emocracy requires the cooperation of the governed. When a mob is prepared to attack the Capitol to prevent our elected officials from both parties from performing their constitutional and statutory duty, democracy is in trouble. The damage that [Defendant] and others caused that day goes way beyond the several-hour delay in the certification. It is a damage that will persist in this country for decades.

Tr. at 69-70. Indeed, the attack on the Capitol means "that it will be harder today than it was seven months ago for the United States and our diplomats to convince other nations to pursue democracy. It means that it will be harder for all of us to convince our children and our grandchildren that democracy stands as the immutable foundation of this nation." *Id.* at 70.

The gravity of these offenses demands deterrence. This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment

rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Rader's lifelong disdain for the rule of law, his lack of remorse for his conduct in this case, his relatively violent statements, and his refusal to follow this Court's conditions of release demonstrates the need for specific deterrence. Rader prepared for "blood in the streets," encouraged his friends and family members to join him, cheered rioters who overwhelmed law enforcement, and then unlawfully invaded the Capitol Building. Even after January 6, 2021, Rader was emboldened, claiming that he and his fellow rioters were "unstoppable" and predicting that they would "rise up again" against President Biden. Rader lied to the FBI by claiming that he did not enter the Capitol Building and, then, maintained that officers defending the Capitol were not doing anything.

Rader is a recidivist who has been arrested and convicted dozens of times, including arrests and at least one conviction since he participated in the assault on the U.S. Capitol Building. And, ignoring the order of this Court, Rader violated supervision conditions that he must (1) report to the Pretrial Services Agency as directed; (2) not use or illegally possess a narcotic drug or other controlled substance; (3) submit to testing for a prohibited substance if required by the Pretrial Services Office; (4) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed; and (5) comply with all rules and regulations of the Northern District of Iowa.

As of the date of this filing, Rader still has not expressed remorse for his conduct. Although he promptly entered a guilty plea, he does not appear to regret his actions or acknowledge their

seriousness. To the contrary, Rader has been defiant about his efforts to prevent the certification of the 2020 election.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assaults on police officers, to conspiracy to corruptly interfere with Congress.[9] This Court must sentence Rader based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot. Although those like Rader convicted of misdemeanors are generally less culpable than defendants convicted of felonies, misdemeanor breaches of the Capitol on January 6, 2021, were not minor crimes. As this Court has repeatedly explained, a probationary sentence should not be the default.[10] *See United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL), Tr. 6/23/2021 at 19 ("I don't want to create the impression that probation is the automatic outcome here because it's not going to be.") (statement of Judge Lamberth at sentencing); *accord*, *United States v. Valerie Ehrke*, 1:21-cr-00097 (PFF), Tr. 9/17/2021 at 13 (statement of Judge Friedman).

---

[9] Attached to this sentencing memorandum is a table providing additional information about the sentences imposed on other Capitol breach defendants. That table also shows that the requested sentence here would not result in unwarranted sentencing disparities.

[10] Early in this investigation, the Government made a very limited number of plea offers in misdemeanor cases that included an agreement to recommend probation, including in *United States v. Anna Morgan-Lloyd*, 1:21-cr-00164 (RCL); *United States v. Valerie Elaine Ehrke*, 1:21-cr-00097 (PFF); and *United States v. Donna Sue Bissey*, 1:21-cr-00165 (TSC). The government is abiding by its agreements in those cases, but has made no such agreement in this case. *Cf. United States v. Rosales-Gonzales*, 801 F.3d 1177, 1183 (9th Cir. 2015) (no unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6) between defendants who plead guilty under a "fast-track" program and those who do not given the "benefits gained by the government when defendants plead guilty early in criminal proceedings") (citation omitted).

Rader has pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C § 3553(6), do apply, however.

For one thing, although the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. Avoiding unwarranted disparities requires the courts to consider not only a defendant's "record" and "conduct" but other relevant sentencing criteria, such as a defendant's expression of remorse or cooperation with law enforcement. *See United States v. Hemphill*, 514 F.3d 1350, 1365 (D.C. Cir. 2008) (no unwarranted disparity regarding lower sentence of codefendant who, unlike defendant, pleaded guilty and cooperated with the government).

The Capitol breach was *sui generis*: a mass crime with significant distinguishing features, including the historic assault on the seat of legislative branch of federal government, the vast size of the mob, the goal of impeding (if not preventing) the peaceful transfer of Presidential power, the use of violence by a substantial number of rioters against police officers, and large number of victims. Thus, even though many of defendants were not charged as conspirators or as codefendants, the sentences handed down for Capitol breach offenses is an appropriate group for purposes of measuring disparity of any future sentence.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, there are some cases which are sufficiently similar to provide a

useful comparison. For example, the Court may wish to consider the case of *United States v. James Little*, No. 1:21-cr-00315 (RCL). Like Rader, Little entered the Capitol despite witnessing law enforcement officers attempt to disburse other rioters. *Id.*, ECF No. 43 at 3. Like Rader, Little expressed no remorse for his conduct, boasting that "we took the Capitol," "we are stopping treason! Stealing elections is treason! We're not going to take it anymore!" *Id.* He, too, blamed law enforcement officers for failing to prevent him from entering the Capitol Building. *Id.* at 4. Little also was active on social media, threatening civil war in response to the election of President Biden and expressing pride in his conduct on January 6 through his Facebook account. ECF No. 55 at 5. There are differences, however. Little proceeded further into the Capitol Building and entered the Senate Gallery, an aggravating factor. ECF No. 43 at 3. As mitigation, his criminal history was significantly less extensive than that of Rader, and he apparently complied with the terms of his supervised release.  Little pleaded guilty to one count of Parading, Demonstrating, or Picketing in a Capitol Building.

At sentencing, this Court explained, "I believe some term of imprisonment is essential in these cases now to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense." ECF No. 55 at 59. The Court therefore imposed a term of 60 days of imprisonment followed by a 36-month term of probation. *Id.* at 60.

This Court sentenced Frank J. Scavo to 60 days of imprisonment and imposed a $5,000 fine for his violation of 40 U.S.C. § 5104(e)(2)(G). *See United States v. Frank J. Scavo*, No. 1:21-cr-00254 (RCL), ECF No. 48. Scavo was a local political figure in his hometown and helped charter buses to transport over 200 local supporters to the former President's rally on January 6, 2021. ECF No. 37 at 2. Scavo entered the Capitol Building within three minutes of the violent breach of the Rotunda doors. ECF No. 33 at ¶ 9. While outside the Rotunda Doors and inside the

20

Capitol Building, he recorded rioters screaming at and assaulting officers and breaching the doors. *Id.* Scavo himself recorded boastful statements from inside the Building about "storm[ing]" and "t[aking] … back" the Capitol. *Id.* at ¶ 10. He left of his own volition about eight minutes after he entered. *Id.* After January 6, 2021, Scavo made public statements downplaying and making light of his conduct. ECF No. 37 at 2. He participated in two interviews with the FBI, at first falsely claiming that he was "pushed inside" the Capitol Building and therefore did not enter voluntarily. *Id.* at 11. But he later voluntarily provided video and photo evidence to the FBI, was cooperative with law enforcement, and expressed remorse for his conduct. ECF No. 33 at ¶ 12. Unlike Rader, Scavo did not make repeated statements threatening civil war or violence to political figures. He also had no prior arrests or convictions, and apparently complied with the terms of his pretrial release. In imposing a 60-day sentence,  this Court explained, "without you and the other people who participated in this, this whole event – that ended up in preventing the government from being able to function – would not have happened." Emily Davies and Tom Jackman, *Florida Man Photographed With Pelosi's Lectern on Jan. 6 Pleads Guilty*, WASH. POST, Nov. 21, 2021.

The Court also may wish to consider the case of rioter Jennifer Ryan. *See United States v. Jennifer Leigh Ryan*, No. 1:21-cr-0050-1 (CRC). Ryan, like Rader, shared her activity before and during the January 6, 2021 attack on the Capitol through social media. *Id.*, ECF No. 48 at 1. She, too, made forecasts of "war" prior to January 6. *Id.* at 6. Ryan pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G) after briefly entering the Capitol Building. *Id.* at 2. Ryan, like Rader, expressed pride in her conduct after unlawfully entering the Capitol, actively spreading false information and lying about the extent of her own conduct. *Id.* at 3-4. Indeed, Ryan falsely claimed in a media interview that she did not enter the Capitol Building at all, only standing "at the doorframe but no further." *Id.* at 4. She was inside the Capitol Building for two minutes, about a minute less than

Rader. *Id.*, ECF No. 55 at 41. Of course, Ryan's case is not identical. She went to the Capitol after viewing the riot on television from her hotel room. *Id.* at 42. Her social media reach went much further than Rader's, and she attempted to profit from her presence during the attack on the Capitol. *Id.*, ECF No. 48 at 4. In mitigation, Ryan only had misdemeanor convictions, remote in time, and her family history suggested reason for leniency. *Id.* at 20-21. In that case, Judge Cooper sentenced Ryan to a term of 60 days imprisonment. *Id.*, ECF No. 56.

The United States here seeks 90 days of imprisonment – a month longer than the sentences imposed in the cases of James Little, Frank Scavo, and Jennifer Ryan. But Rader's violent rhetoric, his lack of remorse for his conduct on January 6, 2021, and – especially – his extensive and unceasing criminal history, compel that his sentence should be more significant. The criminal justice system has been lenient with Rader time and again, but he continues to violate the law.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

**IV.     Conclusion**

Sentencing requires the Court to carefully balance the § 3553(a) factors. Considering these factors, the government recommends that this Court sentence Rader to 90 days of incarceration, 36 months of probation, 60 hours of community service, and $500 in restitution.

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By:     */s/ Jordan A. Konig*
JORDAN A. KONIG
Supervisory Trial Attorney
U.S. Department of Justice
Detailed to the U.S. Attorney's Office
For the District of Columbia
P.O. Box 55
Washington, D.C.  20044
202-305-7917 (v) / 202-514-5238 (f)
Jordan.A.Konig@usdoj.gov

## **CERTIFICATE OF SERVICE**

On this 2nd day of September, 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

*/s/ Jordan A. Konig*
JORDAN A. KONIG
Supervisory Trial Attorney
U.S. Department of Justice
